Ronald POOLER, Appellant,

v.

UNITED STATES of America.

Ronnie BRADLEY, Appellant,

v.

UNITED STATES of America.

Nos. 85–1335, 85–1490.

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1986.
Decided March 27, 1986.

Steinberg & Girsh, P.C., Stephen F. Dryden (argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Barry, Jr., Asst. U.S. Atty., Serena H. Dobson (argued), Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Before SEITZ and GIBBONS, Circuit Judges and BARRY, District Judge *.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Ronald Pooler and Ronnie Bradley appeal from orders entered by the district court dismissing their Federal Tort Claims Act (FTCA) suits, 609 F.Supp. 198; 615 F.Supp. 206, because they are barred by the discretionary function exception in that Act. *See* 28 U.S.C. § 2680(a) (1982). Both suits arose out of a criminal investigation conducted by the Veterans Administration (VA) at the VA Medical Center in Coatesville, Pennsylvania in March of 1981.

## I.

### The Complaints

In separate complaints, Pooler and Bradley allege, and the government does not dispute, that they filed timely administrative claims with the Veterans Administration and that their claims were denied. Each complaint seeks recovery for an allegedly unlawful arrest and an allegedly unlawful prosecution. The arrests were made pursuant to warrants issued by a Pennsylvania judicial officer on charges that Pooler and Bradley sold marijuana on the premises of the VA hospital. Curtis Kimmel, a police officer employed by the VA, filed criminal charges against Pooler and Bradley at the culmination of an investigation into narcotics sales at the VA hospital.

In their complaints, Pooler and Bradley allege that Kimmel's investigation and his decision to file criminal charges were deficient in several respects. First, with respect to the investigation, they allege that Kimmel, in engaging the services of a VA employee, John Cantrell, to serve as an informant, selected an unreliable person with known past drug involvement, and of less than average mental capacity. Second, they allege that Kimmel failed to instruct Cantrell how to conduct himself so as to avoid violating the rights of persons that he would approach in his capacity as an informant. Third, they allege that Kimmel failed to verify, corroborate, or surveil any of the drug transactions entered into by Cantrell, Pooler and Bradley, and thus they aver that his conclusion that they sold marijuana depended solely on the unsubstantiated word of an unreliable informant.

With respect to the decision to file criminal charges, Pooler and Bradley allege that in bringing the charges to the attention of the district attorney's office Kimmel failed to disclose to that office the deficiencies in his investigative methods. They further allege that if those deficiencies had been revealed, the district attorney's office would not have initiated prosecution. Because of Kimmel's failure to disclose this information, they allege that they were arrested and detained until they could arrange for bail. The charges against them, however, were eventually nolle prossed. Finally, Pooler and Bradley claim that Kimmel did not file the charges against them in good faith, but filed them for the purpose of salvaging something from his investigation at the VA hospital and thus for the purpose of saving face.

---

* Hon. Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

## II.

### District Court Rulings

The district court dismissed the complaints at the pleading stage on the ground that the actions complained of fell within the discretionary function exception to the FTCA. The FTCA provides that despite the general rule that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674 (1982), it remains immune from liability for:

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The actions complained of are (1) Kimmel's manner of conducting the investigation, and (2) Kimmel's decision to file charges with the Pennsylvania authorities.

## III.

### Pooler and Bradley Contentions

On appeal, Pooler and Bradley contend that the district court erred in two respects. First, they argue that their suits are not barred by the discretionary function exception because the Kimmel actions of which they complain constitute mere operational functions not falling within the ambit of the exception. Second, they argue that, in any event, their suits are not barred because they fall within the proviso to the intentional tort exception which authorizes suits against the government for certain acts or omissions of law enforcement officers. 28 U.S.C. § 2680(h) (1982). We consider these contentions separately.

## IV.

### The Discretionary Function Exception

*Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), states that the language of section 2680(a) encompasses "the discretion of the executive or passes "the discretion of the executive or the administrator to act according to one's judgment of the best course." *Id.* at 34, 73 S.Ct. at 967. It classified as falling within that section functions "[w]here there is room for policy judgment and decision...." *Id.* at 36, 73 S.Ct. at 968. The line was drawn between decisions made at "a planning level" and those made at "an operational level." *Id.* at 42, 73 S.Ct. at 971. The former constituted discretionary functions; the latter did not. *Id.* See also *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *General Public Utilities Corp. v. United States (GPU)*, 745 F.2d 239 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985); *Bernitsky v. United States*, 620 F.2d 948 (3d Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980). With the *Dalehite* test in mind, we consider the Kimmel actions of which Pooler and Bradley complain.

### A. Investigative Methods

Pooler and Bradley do not here contend that the federal officials in charge of the VA hospital lacked discretion to conduct investigations of drug distribution on the hospital grounds, nor do they contend that those officials lacked the authority to assign Kimmel to conduct that investigation. They urge, however, that at Kimmel's level planning and policy were at an end, and that he was engaged solely in operations. In support of that contention they rely heavily upon *Downs v. United States*, 522 F.2d 990 (6th Cir.1975). In *Downs* the survivors of the deceased victims of an airline hijacking brought suit against the United States under the FTCA claiming that the deaths of the passengers were caused by the negligence of the FBI agent in handling the situation. The United States contended that because the agent was required to exercise judgment in dealing with the hijacker, the discretionary function exception applied. Although noting that "Congress intended 'discretionary functions' to encompass those activities which entail a formulation of governmental policy, whatever the rank of those so en-

gaged," the court held that the actions of the FBI agent did not come within the exception because he was *not* involved in formulating policy but was only directing the actions of others. *Id.* at 997.

██ We need not address the question whether in circumstances such as those in *Downs* this court would find that the discretionary function exception applied. We are not here presented with the negligent implementation of a policy, which has been determined by others, and which results in physical injury or death.[1] In this case Kimmel was placed in charge of an investigation, and was required to decide how that investigation would be pursued. That required consideration of the use and availability of potential informants, and of the competing uses of personnel who might be needed for surveillance. In *Bernitsky*, we observed with respect to the activities of a coal mine inspector that,

> [d]ecision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments.

620 F.2d at 955. In *GPU*, we applied the *Bernitsky* holding to bar recovery against the United States on a claim that the investigation by the Nuclear Regulatory Commission of the safety of the Three Mile Island electric generating plant was inadequate. 745 F.2d at 245. These cases control. Although Kimmel is not a high-level official, he had to exercise judgment as to the policy decision to use an informant and as to the extent of control which should be maintained over the selected informant. If the issue was the use of an undercover agent or informant whose known tendencies toward violence suggested a risk of physical harm either to the targets of an investigation or to all bystanders, the case might well be different. In addition, if the complaint were that agents of the government in the course of an investigation had violated constitutional rights or federal statutes, the outcome would be different since federal officials do not possess discretion to commit such violations. But when

the sole complaint is addressed, as here, to the quality of the investigation as judged by its outcome, the discretionary function should, and we hold, does apply. Congress did not intend to provide for judicial review of the quality of investigative efforts.

### B. Decisions to Prosecute

██ Kimmel's decision to file complaints with the Pennsylvania authorities is an *a fortiori* example of a discretionary function. There is no allegation that Kimmel or the other VA officials who decided to file the charges lacked authority to do so. *See, e.g., Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *Griffin v. United States,* 500 F.2d 1059 (3d Cir.1974). As one court notes,

> Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception.

*Gray v. Bell,* 712 F.2d 490, 513 (D.C.Cir. 1983) (footnote omitted), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). *See also Wright v. United States,* 719 F.2d 1032 (9th Cir.1983); *Smith v. United States,* 375 F.2d 243 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

### V.

### The Intentional Tort Proviso

The intentional tort exception in the Federal Tort Claims Act retains the immunity of the United States in cases involving

> any claim arising out of ... false arrest, [or] malicious prosecution ... *provided,* that with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any

---

1. *But cf. Amato v. United States,* 549 F.Supp. 863 (D.N.J.1982), *aff'd mem.,* 729 F.2d 1445 (1984).

claim arising ... out of ... false arrest ... or malicious prosecution.

28 U.S.C. § 2680(h).

The statute defines an investigative or law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Pooler and Bradley contend that their complaints state claims falling within the quoted proviso. They contend further that even if the actions of which they complain fall within the discretionary function subsection, the later enactment of the proviso, *see* Act of Mar. 16, 1974, Pub.L. No. 93–253, § 2, 88 Stat. 50, must be considered a pro tanto amendment.

Only one case has come to our attention that specifically addresses the interrelationship between the discretionary function exception and the intentional tort proviso. It holds that before suit may be maintained against the United States, even for an intentional tort falling within the proviso, the plaintiff must first clear the hurdle of the discretionary function exception. *Gray,* 712 F.2d at 507–08. *See also Wright,* 719 F.2d at 1034–36. Thus, suit can only be maintained if it is first shown that the government actor was not exercising discretion.

*Ames v. United States,* 600 F.2d 183, 195 n. 3 (8th Cir.1979), and *Solomon v. United States,* 559 F.2d 309, 310 (5th Cir.1977), read the proviso as inapplicable to United States attorneys and to security personnel in military exchanges because these federal officers are not empowered to execute searches, seizures, and arrests for violations of federal law. *See also United States v. Rubin,* 573 F.Supp. 1123, 1124–25 (D.Colo.1983).

■ In this case, Pooler's and Bradley's complaints, read in the light most favorable to them, charge that Kimmel is an officer of the United States "empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law." 28 U.S.C. § 2680(h). No matter how generously we read them, however, the complaints do not charge that Kimmel commit-

ted an intentional tort while executing a search, seizing evidence, or making an arrest. We read the 1974 amendment to section 2680(h) as addressing the problem of intentionally tortious conduct occurring in the course of the specified government activities. It is in the course of such activities that government agents come most directly in contact with members of the public. The government places them in such a position, thereby exposing the public to a risk that intentionally tortious conduct may occur. That Congress intended to deal only with conduct in the course of a search, a seizure, or an arrest is confirmed by the sparse legislative history of the 1974 amendment. The Senate Report on the amendment states that the proviso was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the fourth amendment. *See* S.Rep. No. 588, 93d Cong., 2d Sess. 2–3 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2789, 2790–91.

■ Reading the intentional tort proviso as limited to activities in the course of a search, a seizure or an arrest as a practical matter largely eliminates the likelihood of any overlap between section 2680(a) and section 2680(h). It is hard to imagine instances in which the activities of officers engaging in searches, seizures or arrests would be anything other than operational. When this court is presented with an instance to the contrary, it can address the question answered by the District of Columbia Court of Appeals in *Gray.* For present purposes, we hold only that the Pooler and Bradley complaints do not state claims falling within the proviso to section 2680(h) because no federal officer is charged with a tort in the course of a search, a seizure, or an arrest.

## VI.

### Conclusion

The investigative decision made by Kimmel and his decision to file criminal complaints fall within the discretionary func-

tion exception, section 2680(a), to the FTCA. Those activities do not fall within the proviso to section 2680(h). The judgments appealed from, dismissing the complaints for failure to state a claim against the United States under the Federal Tort Claims Act, will therefore be affirmed.

SEITZ, Circuit Judge, concurring

While I agree with the result reached by the majority, I write separately because of a different perception of the current state of the controlling law, particularly as applied to the present circumstances, and of the scope of section 2680(h), the intentional torts proviso of the Federal Tort Claims Act (FTCA).

I do not believe that the "planning/operational" distinction employed by the majority expresses the present state of the test for the application of the discretionary function exception. The Supreme Court's recent decision in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), "has reduced some of the uncertainty generated by the numerous courts of appeals' decisions that have wrestled with the vague contours of the discretionary exception." *General Public Utilities Corp. v. United States*, 745 F.2d 239 (3d Cir.1984). In *Varig Airlines*, the Court reaffirmed the holding of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), which had often been called into question in recent years. It noted that it is "impossible ... to define with precision every contour of the exception," *Varig Airlines*, 104 S.Ct. at 2764, and quoted *Dalehite's* maxim that " 'where there is room for policy judgment and decision there is discretion.' " 104 S.Ct. at 2764, *quoting* 346 U.S. at 36, 73 S.Ct. at 968. The Court went on:

[f]irst, it is the nature of the conduct, rather than the status of the actor, that governs whether the ... exception applies in a given case. As the Court pointed out in *Dalehite*, the exception covers '[n]ot only agencies of the government ... but all employees exercising discre-

tion. 346 U.S. at 33 [73 S.Ct. at 966]. Thus, the basic inquiry concerning the application of the ... exception is whether the challenged acts of the Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from liability. 104 S.Ct. at 2764.

I believe that the *Varig Airlines* test is the one that must be applied to Kimmel's actions to determine whether the discretionary function exception applies. This is particularly important in the case of the alleged intentional torts involved in Kimmel's decision to seek prosecution of the subjects of his investigation, because in that context the planning/operational distinction is not easily applied.

The discretionary function exception has historically been applied to "prosecutorial decisions as to whether, when and against whom to initiate prosecution [because such decisions] are quintessential examples of governmental discretion in enforcing the criminal law." *Gray v. Bell*, 712 F.2d 490, 513 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). *See also, Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir.1983); *Smith v. United States*, 375 F.2d 243 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

The cited cases, however, involve prosecutorial decisions made by prosecuting authorities, not decisions by law enforcement agents to seek prosecution based on the results of an investigation. Our task under *Varig Airlines*, then, is to determine whether Kimmel's decision to bring charges against Pooler and Bradley were "of the nature and quality that Congress intended to shield from liability." 104 S.Ct. at 2764.

In doing so, it is necessary to parse the activities of Kimmel the head of an investigation from those of Kimmel the planner or operative so that the inquiry focuses on the precise activity complained of. Viewed in this context, it is clear that the process of assessing the results of a protracted investigation and deciding whether those

results warrant presentation to prosecuting authorities is closely analogous to a prosecutor's exercise of prosecutorial discretion, and similar policy considerations are present. Since *Varig Airlines* directs us to analyze the "nature and quality" of the activity "rather than the status of the actor," *id.*, I would conclude that the discretionary function exception applies to Kimmel's decision to bring charges. Plaintiffs' claims are therefore barred by that exception "whether or not the discretion [was] abused," 28 U.S.C. § 2680(a), unless, as plaintiffs claim, the intentional tort proviso can be read to override the discretionary function exception.

There are few cases interpreting the scope of section 2680(h) and even fewer addressing the interrelationship between that section and the discretionary function exception. The intentional tort proviso was enacted by Congress in 1974. Several incidents in which federal agents engaged in "abusive, illegal and unconstitutional 'no-knock' raids," Sen.Rep. 93–588, *reprinted in* 1974 U.S.Code Cong. & Admin.News 2789, 2790, motivated Congress to amend the FTCA to prevent "future abuses." *Id.* The amendment was generally intended to be coextensive with actions brought under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and thus to provide a cause of action against the government whenever *Bivens* would provide one against the individual federal employee. Sen.Rep. 93–588, *reprinted in* 1974 U.S. Code Cong. & Admin.News at 2791. *See also Carlson v. Green*, 446 U.S. 14, 19–20, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1979).

However, the proviso was not, as the majority holds, intended to be limited in scope to the types of behavior that provided the initial motivation for its passage:

> This whole matter was brought to the attention of the Committee in the context of the Collinsville raids, where the law enforcement abuses involved Fourth Amendment constitutional torts. Therefore, the Committee amendment would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause. However, the Committee's amendments should not be viewed as limited to constitutional tort situations but would apply to any case in which a Federal law enforcment agent committed the tort while acting within the scope of his employment or under color of Federal law.

Sen.Rep. 93–588, *reprinted in* 1974 U.S. Code Cong. & Admin.News at 2791.

Because Congress intended section 2680(h) to encompass activities outside the arrest, search, and seizure context, *see e.g., Carlson v. Green, supra* (§ 2680(h) allows action for death of prisoner due to intentional indifference of federal prison officials motivated by racial prejudice), this case forces us to confront the interface between sections 2680(a) and 2680(h).

Congress gave no guidance in the legislative history of the intentional tort proviso respecting a line of demarcation between that proviso and the discretionary function exception. Other courts that have faced the situation where an intentional tort has allegedly been committed by a federal law enforcement officer who was arguably exercising a discretionary function have expressed concern that the provisions should not "be read to eviscerate each other." *Caban v. United States*, 671 F.2d 1230, 1234 (2d Cir.1982). In *Caban*, the court declined to classify "as discretionary the basically mechanical duty to ascertain whether an applicant meets the minimal standards for entry into this country [because to do so would] jeopardize a primary purpose for enacting § 2680(h)." *Id.*

In the case before us, however, where the alleged intentional tort took place in a context that involved the performance of a discretionary function, I would "reject the contention that intentional tort claims based on the acts of 'investigative or law enforcement officer[s]' may never come within the purview of the discretionary

function exception." *Gray v. Bell,* 712 F.2d 490, 507 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). *Gray* recognized that some challenged conduct, including claims of malicious prosecution, might involve the exercise of a discretionary function and thus be barred by section 2680(a). The court held nevertheless that since statutes waiving the sovereign immunity of the United States must be " 'construed strictly in favor of the sovereign,' " 712 F.2d at 508, *quoting McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), claimants must clear the discretionary function hurdle *and* satisfy the requirements of the intentional tort proviso in order to bring such claims under the FTCA.

I stress that the activity giving rise to the alleged malicious prosecution in this case involved the evaluation of the results of a wideranging and protracted investigation. We are not called upon to decide whether every decision by a law enforcement officer to seek prosecution of an individual per se involves a discretionary function and is therefore barred by section 2680(a) despite the potential applicability of section 2680(h). The essence of the *Varig Airlines* test is that each situation must be analyzed independently. I would hold, however, that where the discretionary function exception applies, it precludes a suit that otherwise might satisfy the intentional tort proviso. Since Kimmel's decision to seek prosecution involved the exercise of a discretionary function, it follows that the claims asserted under the intentional tort proviso are barred.