**John A. WARD and Lorraine M. Ward, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 89–460–JLL.**

United States District Court, D. Delaware.

May 21, 1990.

Thomas S. Neuberger, Wilmington, Del., and William A. Loftus, of Shrager, McDaid, Loftus & Flum, Philadelphia, Pa., of counsel, for plaintiffs.

William C. Carpenter, Jr., U.S. Atty., and Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., and David P. Buck, U.S. Postal Service, Washington, DC, of counsel, for defendant.

### MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. BACKGROUND

John A. Ward and Lorraine M. Ward ("Ward") brought this action under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Ward seeks damages for psychological and physical injuries caused by the allegedly "willful and outrageous" conduct of his employer, the United States Postal Service ("Postal Service"). Docket Item ("D.I.") 10 at 3. The Postal Service has moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

Ward's tenure as a Postal Service employee began on September 20, 1960. He became a regular city letter-carrier in March of 1966, and performed those duties without incident until May 29, 1982, when he reported a work-related back injury. D.I. 7, Ex. 1 at ¶ 4. The back condition rendered Ward totally disabled. He submitted a Notice of Occupational Illness or Disease and Claim for Compensation to the Department of Labor on January 31, 1983, and was determined to be partially disabled on August 31, 1983. Ward's partial disability permitted him to work two hours per day. For the balance of his time, six hours per day, he received benefit payments under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, et seq.

The Postal Service routinely reviews its FECA files. During one such review Postal Inspector C. Smith ("Smith") commenced an investigation of Ward's claim. Smith does not recall exactly why he selected Ward's file for review. He does note the fact that Ward was suffering from a long-term soft-tissue injury and that this type of injury can lend itself to an abuse of the system. Smith also noted that Ward's set two hour per day work schedule made it easy to locate Ward and would facilitate an investigation. See D.I. 7, Ex. 2 at 2.

On September 10, 12, and 16 of 1986, Smith saw, and photographed, Ward placing a television set in the back seat of his car, carrying large bags while shopping, reaching into his car trunk, and manually raising and lowering his garage door. Because the activities appeared inconsistent with Ward's claimed disability, Smith con-

tacted Ward's physician, Dr. Pierre L. LeRoy ("LeRoy"), and told LeRoy of his observations. LeRoy indicated that in diagnosing an injury of this type he had to rely to a great extent on the representations of the patient, see D.I. 10, Ex. E at 1. LeRoy also stated that these activities, indeed, were inconsistent with the representations Ward had made when LeRoy placed medical restrictions on Ward's activities.

Ward cites a section of LeRoy's statement indicating that the doctor's objective findings alone, e.g., anxiety and stress, limited lumbar range motion, lumbosacral spasm, and an abnormal thermogram, would restrict Ward from performing a full eight hours of light duty work. See D.I. 10, Ex. E. It is in that same statement, however, that LeRoy indicates that the activities Smith observed are inconsistent with the diagnosis, and that if Ward could actually lift a television set, etc., then Ward would be capable of performing eight hours of light duty work.[1]

On January 31, 1986, after discussing Ward's situation with LeRoy, Smith, with Postal Inspector T. Marshall ("Marshall"), interviewed Ward. Smith told Ward that he had investigated Ward's claim and had found that Ward engaged in activities inconsistent with his claimed medical disability. Ward claims that Smith accused him of defrauding the Government and that Smith told him to sign a "confession." See D.I. 10, Ex. F. The interview lasted no more than five minutes and concluded without Ward making a statement or signing the "confession."

Almost one year later, on January 7, 1987, Ward reported that he was totally disabled because of depression and suicidal tendencies resulting from the 5-minute January 31, 1986 interview with Smith. This last claim for compensation was denied. No personnel action has been taken against Ward, and he continues to receive payments for six hours of partial disability.

1. Later, in an undated affidavit, LeRoy recanted his earlier conclusion and stated that "Ward has not violated the tolerance limits." D.I. 10 at Ex. E.

## II. DISCUSSION

### A. *Standard for Summary Judgment*[2]

■ Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To resist Defendants' motions for summary judgment, Plaintiffs must come forward with sufficient specific facts to establish a genuine factual issue for trial. "Where the full record, taken together, could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial." *United States v. One 107.9 Acre Parcel of Land,* 898 F.2d 396, 398 (3d Cir. 1990) (1990 WL 29017 at *2) (relying on *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The Court notes, however, that it is the moving parties' burden to "prov[e] that no genuine issues exist as to any material fact," *Miller v. Eichleay Engineers, Inc.,* 886 F.2d 30, 35 (3d Cir. 1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)), and that all ambiguities and reasonable inferences must be resolved in favor of the non-moving party. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976); *Wilmington Housing Authority v. Pan Builders, Inc.,* 665 F.Supp. 351, 351 (D.Del.1987). The underlying substantive law identifies those facts which are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. The Federal Tort Claims Act

■ The FTCA is the sole basis for jurisdiction for tort claims brought against the United States.[3] *See* 28 U.S.C. § 2679(b) (incorporating 28 U.S.C. § 1346(b)); *see also* 28 U.S.C. § 1346(b) (granting exclusive jurisdiction to the district courts for all civil actions against the United States). Pursuant to the FTCA, the district courts have no jurisdiction over

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a). This case concerns the second clause of Section 2680(a). Consequently, if Smith's actions were "a discretionary function" the Government's motion must be granted.

Ward "agrees that the Postal Service's decision to investigate John Ward and that even the decision to conduct covert surveillance" fall within the discretionary function exception to this Court's jurisdiction. D.I. 10 at 13. Indeed, Postal Inspectors performing within the scope of their duties are protected. *See Toscano v. Olesen,* 189 F.Supp. 118 (S.D.Cal.1960); C. Antieau & M. Mecham, Tort Liability of Government Officers and Employees 51–52 (1990). The single issue to be addressed is whether the meeting of January 31, 1986, among Ward, Smith and Thompson, and the manner in which it was conducted, should be considered a "discretionary function." For the purposes of this determination, the court will accept as true Ward's rendition of that encounter. Ward, however, also contends

The Court finds the conditions for treating a motion to dismiss as a motion for summary judgment have been met for the legal questions ruled upon and will, accordingly, treat the Government's motion as one for summary judgment.

---

**2.** Federal Rule of Civil Procedure 12(b) states: If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**3.** 39 U.S.C. § 409(c) makes the FTCA applicable to the Postal Service.

that this meeting was conducted independent of the investigation of his disability claim. The government takes exception to this contention.

The Court will not accept Ward's characterization of the January 31 meeting, namely that that meeting was somehow separate or disassociated from the on-going investigation of Ward's alleged disability. Acceptance of Ward's characterization would be to accept a system where a final determination is made concerning an individual before that individual is ever confronted with the charge against him. It is inconceivable that Ward desires a set procedure where an investigation, possibly resulting in an adverse personnel action and criminal prosecution, is deemed completed prior to granting the individual under suspicion an opportunity to be heard by the investigating official. Clearly, such an interview, conducted before any final determination, is part and parcel with the investigation as a whole. The January 31 meeting was plainly an integral part of Smith's investigation. Ward's complaint, therefore, concerns the manner in which the *investigatory* interview of January 31, 1986, was conducted, and whether that interview was a "discretionary function." [4]

The Supreme Court's decision in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), is the root of the discretionary function analysis. The plaintiffs in *Dalehite* brought suit against the United States for damages resulting from an explosion of fertilizer and ammonium nitrate base. Plaintiffs alleged negligence on the part of the government in adopting and implementing the fertilizer export program that led to the explosion. The Court found that the United States, and every government employee involved in the program from its inception through its implementation, was immune from suit pursuant to 28 U.S.C. § 2680(a). At the outset of its discussion, the Court noted that "Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions."

*Id.* at 32, 73 S.Ct. at 966. Section 2680(a) "excepts acts of discretion in the performance of governmental functions or duty 'whether or not the discretion involved be abused.' Not only agencies of government are covered but all employees exercising discretion." *Id.* at 33, 73 S.Ct. at 967. The Court was careful to note that the discretion protected by the exception "is the discretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law." *Id.* at 34, 73 S.Ct. at 967. Accordingly, the Court held that "[w]here there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step...." *Id.* at 36, 73 S.Ct. at 969.

The vitality of *Dalehite* was reaffirmed in two recent Supreme Court decisions. In *United States v. S.A. Empresa De Viaco Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Court held that the United States was immune from suit for damages attributable to the FAA's "spot-check" program. That program was "designed to encourage manufacturers and operators to comply fully with minimum safety requirements." *Id.* at 815, 104 S.Ct. at 2765. The Court adopted the Government's argument that programs designed to promote compliance with Federal rules and regulations fell within the discretionary function exception. *See id.*

More recently in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Court distilled several established principles from *Varig* and *Dalehite*. When determining whether government activity falls within the discretionary function exception a court must

---

**4.** Ward has not alleged that this interview violated a constitutional or statutory right. A "discretionary function" analysis is, therefore, appropriate. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

first look to the nature of the conduct in question, and particularly "whether the action is a matter of choice for the acting employee." *Id.* 108 S.Ct. at 1958. If an act was discretionary, a court must then determine "whether that judgment is of the kind that the discretionary function exception was designed to shield.... In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id.* at 1959.

In *Berkovitz*, the Court found that the United States was not necessarily immune from suit. The case concerned an individual who sued the Government after contracting polio from an oral polio vaccine that had been approved by the United States. The Court could not determine the exact theory plaintiff relied on as the basis of liability. Under one possible interpretation of the plaintiff's theory, the Court held that an agency's failure to follow mandatory procedures was not a "discretionary function" protected from suit under the FTCA. *See id.* at 1962–63.

The Court's analysis of a second interpretation of the plaintiff's theory was inconclusive. This second interpretation was that the agency had complied with its own procedures, but had made an incorrect determination as to the polio vaccine. The plaintiff contended that the determination involved "the application of objective scientific standards, whereas the Government assert[ed] that the determination incorporates considerable policy judgment." *Id.* at 1963. Although unable to resolve the question on the record before it, the Court held that these two contentions properly framed the issue.

Turning to the matter at hand, Smith's investigation of Ward served two separate public policies: regulating FECA claims and preventing criminal fraud against the Government. Under the applicable case law, both policies are of the nature that Section 2680(a) was intended to protect. In implementing these policies, Smith exercised permissible discretion in choosing Ward's file for review, in conducting surveillance of Ward, in choosing the manner of the surveillance, in choosing to interview Ward, and in choosing the manner he interviewed Ward.

Unlike *Berkovitz*, neither party has cited specific regulations for conducting FECA file reviews. Additionally, there are no regulations in the record governing the manner of conducting an investigatory interview, and no allegation that such regulations exist. Accordingly, there is neither mandated action nor set procedure for Postal Inspectors to follow when investigating FECA claims. Smith's investigation of Ward was of the "spot-check" variety addressed in *Varig*, meant to encourage voluntary compliance with FECA, although Postal Inspectors are given even greater latitude than the FAA inspectors in *Varig*. *Cf. Varig*, 467 U.S. at 817–18, 104 S.Ct. at 2766. Postal Inspectors are granted broad discretion in the manner in which they investigate claims and implement public policy. Smith exercised this exact discretion when investigating Ward's file.

> As in *Varig*, the Postal Inspector's implementation for compliance review is a plainly discretionary activity of the "nature and quality" protected ·by § 2680(a). When an agency determines the extent it will supervise the ... [compliance] of private individuals, it is exercising discretionary regulatory authority of the most basic kind.... It follows that the acts of [government] employees in executing the "spot-check" program ... are protected by the discretionary function exception as well.

*Varig*, 467 U.S. at 819–20, 104 S.Ct. at 2767–68. This Court concludes, therefore, that in conducting his investigation, and in the manner he conducted his interview of Ward, Smith exercised the type of discretion meant to be immunized from liability under Section 2680(a).

This conclusion is bolstered by the Third Circuit's opinion in *Pooler v. United States*, 787 F.2d 868 (3d Cir.), *cert. denied*, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986), and the District Court for the District of Columbia's opinion in *Sottile v. United States*, 608 F.Supp. 1040 (D.D.C.

1985). In *Pooler* the Third Circuit determined that the decisions made by a police officer, employed by the Veterans Administration, during a drug investigation fell within the discretionary function exception. The court stated that "[d]ecision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments." 787 F.2d at 871 (quoting *Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir.1980), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1985)). That the investigator in question was not a high level official did affect the court's determination. *See id.* Similarly in *Sottile*, the actions of an FAA inspector, who continued an investigation after a complaint had been withdrawn, were held to be within the ambit of Section 1482(a): "The FAA inspectors are given a necessarily broad amount of flexibility and discretion in planning an investigation and preparing a report." 608 F.Supp. at 1043.

The lesson of *Pooler* and *Sottile* is that a federal investigator's choice concerning the manner an investigation will proceed constitutes an exercise of discretion protected by the FTCA. Smith's meeting with Ward was an integral part of an ongoing investigation into Ward's compensation claim. Smith exercised discretion in the planning and execution of his investigation when he conducted the interview in the manner that he did. Just as choice as to different types of enforcement action is a discretionary judgment, *see Pooler*, 787 F.2d at 871, so too, in this case, is the choice as to different means of conducting an investigation a discretionary judgment exempt from this Court's jurisdiction under 28 U.S.C. § 2680(a). Accordingly, the Government's motion will be granted.[5]

---

**5.** Lorraine M. Ward's claims are derivative in nature and will be dismissed in light of the disposition of John A. Ward's claims.