**George W. SIMPSON, Plaintiff,**

**v.**

**J. McCARTHY, Corrections Officer, F.C.I. Loretto, PA., et al., Defendants.**

**Civ. A. No. 90–121J.**

United States District Court, W.D. Pennsylvania.

June 29, 1990.

---

F.C.I. Loretto is entirely speculative, we have no basis for entertaining a request for injunctive relief, either against defendants or the Bureau of Prisons. To determine whether any damages action can be stated against any of the individual federal correctional officials requires a review of the field of civil actions available under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

In *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court held that individual federal officers could be held personally liable for violating the Eighth Amendment by deliberately (or by reckless indifference) depriving an inmate of required medical care for serious medical needs. See *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Five justices in the *Carlson* majority, speaking through Justice Brennan, stated that victims of a constitutional violation by a federal agent ought to have a *Bivens* cause of action unless there are "special factors counselling hesitation in the absence of affirmative action by Congress," 446 U.S. at 18, 100 S.Ct. at 1471, quoting *Bivens*, supra, 403 U.S. at 396, 91 S.Ct. at 2005, or unless Congress expressly declared that it had provided an alternative remedy which was as effective as a *Bivens* action.

## MEMORANDUM ORDER

### D. BROOKS SMITH, District Judge.

Plaintiff, incarcerated now at F.C.I. Danbury, has filed this civil rights action based on alleged abuses of his constitutional rights by a corrections officer, J. McCarthy, while plaintiff was being held at F.C.I. Loretto, PA. Because plaintiff appears to be indigent, we grant his motion to proceed *in forma pauperis* and direct the Clerk to file the complaint without prepayment of filing fees.

██ Plaintiff seeks to have this court "determine [whether] plaintiff has a clear right to monetary relief for the abuses he has suffered and to make these officers refrain from this type of conduct in the future." Because plaintiff's retransfer to

Subsequent cases made it clear, however, that "special factors counselling hesitation" should be broadly construed in order to prevent uncontrolled *ad hoc* judicial legislation. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), held that the Supreme Court would not authorize a *Bivens* action for federal employees whose First Amendment right to speak on a matter of public concern, see *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), had been infringed by a superior. Speaking for a unanimous Court, Justice Stevens stated that the "special factors counselling hesitation" prong did not necessarily concern the merits of the cause of action, but rather the question of *who* should decide what remedy should be provided. 462 U.S. at

380, 103 S.Ct. at 2413. Deferring to the Congress' greater familiarity with the appropriate remedial scheme as reflected in the long history of legislative management of the civil service system, the Court took a hands off approach, even though the Congress had not, as *Carlson v. Green* would have required, stated that it considered the statutory civil service remedies to be exclusive, and even though the Court assumed that a *Bivens* action would provide greater relief. See 462 U.S. at 372–73, 103 S.Ct. at 2408–09. See also *Gaj v. United States Postal Service*, 800 F.2d 64 (3d Cir.1986).

More recently, in *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) the Court refused to create a *Bivens* remedy for individuals who alleged violations of the due process clause of the Fifth Amendment resulting from termination of their Social Security disability benefits under the continuing disability review program. As the dissent in that case pointed out 487 U.S. at 430–33, 108 S.Ct. at 2471–73, 101 L.Ed.2d at 386–87, the Congress had not precluded the creation of a *Bivens* action. In fact, one of the "factors counselling hesitation" to the majority was the very silence by Congress in extending, to individuals whose benefits had been improperly terminated, any remedies beyond payment of back benefits. See also *Neiman v. Secretary, HHS*, 722 F.Supp. 950, 952–53 (E.D.N.Y.1988); *Baird v. Haith*, 724 F.Supp. 367, 380–81 (D.Md.1988).

Further, in *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Court, through Justice Scalia, held that no *Bivens* action was available to military personnel who suffered bodily injury in the course of military service. The Court expressly grounded its denial of a cause of action on the principle that the management of the remedies and rights incident to military service was peculiarly a legislative function, and that judicial inter-

vention was therefore inappropriate. The Court fully recognized not only that Congress had not expressly stated that its remedy in the area—the Federal Tort Claims Act—was exclusive, but also that there was *no* remedy under the FTCA due to the holding of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). See *United States v. Stanley*, 483 U.S. at 683–84, 107 S.Ct. at 3063–64. See also *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (no *Bivens* action for service personnel's deprivation of right to equal protection of law by superior officer).

It may safely be said, therefore, that the dictum of *Carlson v. Green* which urged the creation of constitutional torts unless Congress had provided a remedial scheme equivalent to *Bivens* and had expressly stated that the remedy was exclusive, is not good law.[1] Following *Bush v. Lucas, United States v. Stanley*, and *Schweiker v. Chilicky*, we must look chiefly to whether there are "special factors counselling hesitation" in order to determine whether a *Bivens* action may be maintained.

As the holding of *Carlson v. Green* might suggest, a *Bivens* action for deliberate indifference to a prisoner's serious medical needs is analytically entirely separate in its effect on prison discipline from a *Bivens* action challenging that disciplinary system itself. We decline to extend *Carlson v. Green* to create a *Bivens* action based on the plaintiff's allegations that he was harassed by malicious disciplinary actions and searches of his cell taken by defendant McCarthy. The Federal Tort Claims Act, 28 U.S.C. § 2680(h), provides for an action against the United States for offenses akin to those alleged by the plaintiff. See *Pooler v. United States*, 787 F.2d 868, 873–74 (3d Cir.1986) (concurrence of Seitz, J.) cert. denied 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1987). Further,

---

**1.** The 1988 amendment to the exclusivity of remedy provision, Pub.L. 100–694, § 5, 28 U.S.C. § 2679(b)(1) and (2), makes it clear that Congress has not declared the FTCA the exclusive remedy for a constitutional tort, thus declining to overturn *Bivens, Carlson* and *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d

846 (1979). The legislative history of the amendment, 1988 U.S.Code Cong. and Admin. News, 5945–55, suggests that Congress accepted the Supreme Court's creation of constitutional torts in these three cases, but expressly took no position on the creation of further causes of action. *Id.*, 5949–51.

the maintenance of discipline within a prison, whether a federal or state institution, is historically and legally a responsibility entrusted strictly to the executive and legislative branches, which have the superior resources and institutional competence for the task. See *Turner v. Safley*, 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977). The impairment of good order within a prison that undoubtedly would occur if prisoners were allowed to sue their jailors for slights as petty as those set out in plaintiff's complaint does more than counsel hesitation; it commands it.

■ The holding of *Carlson v. Green*, of course, has not been overturned, and we therefore must analyze whether the plaintiff can allege a cause of action under *Estelle v. Gamble* for deliberate indifference to his serious medical needs. A review of the plaintiff's complaint, however, reflects that throughout his several pages of allegations against defendant McCarthey, plaintiff claims only that on one occasion Officer McCarthy threw out some prescribed anti-inflamatory drugs and painkillers during an after-supper locker search, and that plaintiff was required to go to sick call the next morning to replace them. He alleges that in the intervening period he suffered pain as a result. This is simply insufficient to allege an *Estelle v. Gamble* claim, even if plaintiff were additionally to allege that the defendant took the actions alleged with the intention of causing the plaintiff pain.

We therefore dismiss the *Estelle v. Gamble* complaint alleged by plaintiff as frivolous within the meaning of 28 U.S.C. § 1915(d). We dismiss the claims relating to the disciplinary measures as within the scope of the Federal Tort Claims Act, without prejudice to plaintiff proceeding under that Act. The Clerk is directed to mark this matter closed.