DIAZ, Circuit Judge,
concurring:
I join in full Judge Floyd’s well-reasoned opinion but write separately to address the troubling inconsistency produced by application of the Federal Torts Claim Act (“FTCA”) provisions at issue in this case. We hold today that the FTCA waives sovereign immunity for the intentional torts of law enforcement officers, regardless of whether the tort occurred while the officer was engaged in a law enforcement activity. Our decision leads to the anomalous situation in which the federal government could be liable for the actions of a law enforcement officer but would be immune from liability for the same conduct committed by another federal employee under the same circumstances. Nevertheless, although such a result can be criticized as inconsistent and unreasonable, I cannot say that it is so absurd as to allow us to alter the meaning — as other courts have — of an otherwise unambiguous statute.
The FTCA provides that the United States is liable for its torts “in the same manner and to the same extent as a private individual under like circumstances.” 28 U.S.C. § 2674. This waiver of sovereign immunity is subject to several qualifications, including one for intentional torts committed by federal employees. Id. § 2680(h). The qualification retaining sovereign immunity for intentional torts contains a special proviso, however, for law enforcement officers. Specifically, the law enforcement proviso waives sovereign immunity “with regard to acts or omissions of investigative or law enforcement officers ... [for] any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.” Id. The proviso defines an “investigative or law enforcement officer” as “any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.” Id. As Judge Floyd explains, “[t]he plain language of the law enforcement proviso stipulates two conditions for its application: (1) an individual fitting the definition of an ‘investigative or law enforcement officer’ must commit an intentional tort, and (2) the claim must arise ‘out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.’ ” Panel Op. at 255 (citing Harris v. United States, 677 F.Supp. 403, 405 (W.D.N.C.1988)).
This largely unqualified waiver of sovereign immunity for law enforcement officers could, as demonstrated by this case, lead *257 to inconsistent results. Here, Officer Kevin Lane allegedly assaulted Nicholas Ignacio through verbal insults and physical intimidation. The alleged assault occurred while the pair was working at a Pentagon security checkpoint. The confrontation had nothing to do with Lane’s duties as a Pentagon police officer, amounting to little more than a personal dispute between coworkers. Under the law enforcement proviso, however, this workplace kerfuffle has exposed the United States to potential liability, whereas the same exchange involving federal employees who do not wear a badge and carry a weapon would not have.
The relevant legislative history arguably suggests that Congress intended for the law enforcement proviso to target primarily intentional torts committed by officers while engaged in law enforcement activities. See, e.g., S.Rep. No. 93-588, 93d Cong., 2d Sess. 3 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2792 (stating that the purpose of the proviso was to “provid[e] a remedy against the Federal Government for innocent victims of federal law enforcement abuses”). Congress passed the proviso in response to a series of “no-knock” raids carried out by federal narcotics agents in Collinsville, Illinois. Id. (explaining that the purpose of the proviso was to provide an “effective legal remedy against the Federal Government for the actual physical damage [and] the pain, suffering and humiliation to which the Collinsville families were subjected”).
Highlighting the “arbitrary distinction” between investigative and law enforcement officers and other federal employees created by strict application of the law enforcement proviso, several courts have limited the scope of the FTCA’s waiver of sovereign immunity to only those intentional torts committed by an officer while engaged in a law enforcement activity. Orsay v. U.S. Dep’t of Justice, 289 F.3d 1125, 1134 (9th Cir.2002); see also Pooler v. United States, 787 F.2d 868, 871-72 (3d Cir.1986); Murphy v. United States, 121 F.Supp.2d 21, 24-25 (D.D.C.2000). For example, in Pooler, the Third Circuit determined that the waiver’s reach was limited to torts committed by officers during the course of a search, seizure, or arrest. 787 F.2d at 872. Similarly, in Orsay, the Ninth Circuit held that the law enforcement proviso “reaches only those claims asserting that the tort occurred in the course of investigative or law enforcement activities.” 289 F.3d at 1136. Confronting a situation similar to ours in which the plaintiff levied allegations of assault based on a series of workplace threats, the Orsay court reasoned that “[t]o construe [the law enforcement proviso] otherwise — as reaching these workplace torts — would ... produce the bizarre result that suit lies against the United States when one federal law enforcement officer punches another in the office, but not when other federal employees engage in the same conduct.” Id. at 1134.
As tempting as it is to follow the lead of our sister circuits, settled principles of statutory construction prevent us from limiting the waiver of immunity contained in the law enforcement proviso. To begin with, absent an ambiguity in the words of a statute, our analysis begins and ends with the statute’s plain language. In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir.2004). We have recognized an exception to the plain meaning rule for the “‘exceptionally rare’” instance in which applying it results in an absurd outcome. Id. (quoting Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir.2001)). In that regard, we have explained that “[f]or this exception to apply ... the absurdity ‘must be so gross as to shock the general moral or common sense.’ ” Md. State Dep’t of Educ. v. U.S. Dep’t of Veterans Affairs, 98 F.3d 165, 169 (4th Cir.1996) (quoting *258 Crooks v. Harrelson, 282 U.S. 55, 59-60, 51 S.Ct. 49, 75 L.Ed. 156 (1930)); see also Sunterra, 361 F.3d at 268 (“In assessing whether a plain reading of a statute implicates the absurdity exception ... the issue is not whether the result would be ‘unreasonable,’ or even ‘quite unreasonable,’ but whether the result would be absurd.” (citation omitted)). Finally, we have explained that “if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd.” Id. (citing Sigmon Coal Co. v. Apfel, 226 F.3d 291, 308 (4th Cir.2000)).
Applying these principles, the plain meaning of the law enforcement proviso compels the holding we reach today. See Panel Op. at 255 (“[W]e decline to import a requirement that an officer commit the tort in the course of an investigative or law enforcement activity and hold instead that the law enforcement proviso waives immunity whenever the two conditions specified by the plain language are satisfied.”).* Those courts that have strayed from the plain language to import a limitation not otherwise expressed in the statute have failed to persuasively explain how the text of the statute admits of any ambiguity. In Pooler, the Third Circuit did not address whether the statute was ambiguous but instead merely “read” the limitation into the statute to better accord with its view of what “Congress intended.” 787 F.2d at 872. In Orsay, the Ninth Circuit found that the statute was ambiguous because it was “reasonably susceptible” to multiple interpretations but failed to explain how the meaning of the language employed in the statute was anything other than plain. 289 F.3d at 1134. Noting that “any ambiguities in the scope of the government’s waiver must be construed in favor of immunity,” the court proceeded directly to a discussion of Congress’s intent and the legislative history, without addressing the plain language of the statute. Id. at 1133-35.
I agree with Judge Floyd, however, that “[wjhere as here, the text of the statute is unambiguous, we should not engage in an analysis of legislative history to fabricate ambiguity.” Panel Op. at 255. Instead, we must apply the plain meaning of the statute unless the result would be absurd. While the inconsistent treatment of investigative and law enforcement officers and other federal employees may well be arbitrary and unreasonable, I cannot say that the result is so absurd as to “shock the general moral or common sense.” See Md. State Dep’t of Educ., 98 F.3d at 169 (quotation omitted). To the contrary, although I am troubled by the manner in which the statute parses liability for workplace torts committed by federal employees, it is certainly plausible that Congress intended to hold law enforcement officers to a higher standard given the important trust society places in them. When the language of a statute is subject to a plausi *259 ble construction, we are compelled to follow the plain meaning. See Sunterra, 361 F.3d at 268. Accordingly, I concur in Judge Floyd’s opinion.

 As Judge Floyd notes, "the proviso does not relax the FTCA’s jurisdictional mandate requiring that torts be committed within the scope of employment.” Panel Op. at 255. The scope of employment requirement, however, may do little to remedy the incongruity of treating law enforcement officers differently from other federal employees when assessing the sovereign’s liability under the FTCA. If anything, resorting to state law to determine whether a federal employee’s conduct is within the scope of employment is likely to lead to disparate results based on differences in the law from state to state. Moreover, as is the case here, the scope of employment question may present factual disputes that preclude early resolution. In short, the scope of employment requirement is no substitute for a limiting principle that avoids the inconsistent application of sovereign immunity created by the law enforcement proviso. Nevertheless, I agree with my colleagues that our authority does not extend so far as to impose such a limiting principle in this case.