**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 92 C 2396.

United States District Court, N.D. Illinois, E.D.

Feb. 26, 1993.

Robert M. Wattson, for plaintiff.

Elizabeth Strange, U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Employers Insurance of Wausau ("Wausau") has filed this action against the United States under the Federal Tort Claims Act ("FTCA," 28 U.S.C. §§ 2671–2680).[1] Wausau challenges the determination, made by the Environmental Protection Agency ("EPA"), that Wausau had responsibility under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA," 42 U.S.C. §§ 9601–9660)[2] for the cleanup of contamination at a facility in Romulus, Michigan. Because Wausau had to spend over $2 million to carry out that cleanup, it advances three claims to recoup those costs, one sounding in malicious prosecution (Count I), another in abuse of process (Count II) and the third in negligence (Count III).

In response the United States has moved to dismiss Wausau's action for lack of subject matter jurisdiction. Its motion is based on

---

1. All citations to FTCA provisions will simply take the form "Section—."

2. All citations to CERCLA provisions will take the form "CERCLA § —," employing the Title 42 section numbering rather than CERCLA's internal numbering.

two limitations built into FTCA as exceptions to the government's waiver of sovereign immunity under that statute:

    1. Section 2680(a)'s discretionary function provision and

    2. Section 2680(h)'s preclusion of malicious prosecution and abuse of process claims except for those within the scope of a proviso enacted in 1974 (Pub.L. 93–253, § 2, 88 Stat. 50).

Because the Supreme Court has twice spoken to the discretionary function issue in a definitive way in the past few years (*Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)), and because that Section 2680(a) provision is potentially dispositive of the entire case while Section 2680(h) is not, this Court has directed the parties to limit their current attention to questions bearing on the discretionary function exception—eschewing any discussion of Section 2680(h) at least for the time being. Wausau has not heeded that direction in its just-tendered 44–page responsive memorandum,[3] but what it *has* said there about Section 2680(h) has only succeeded in talking itself out of court on its Counts I and II.

As stated earlier, it was in 1974 that Section 2680(h) was amended to carve out an exception to the statute's previously-existing absolute prohibition against private actions against the government charging malicious prosecution, abuse of process and a group of other intentional torts. Here is the present version of the statute, with its original total bar having been modified by the entire proviso that follows:

    (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Nothing in EPA's conduct, in the course of reaching its decision that required Wausau to clean up the contaminated property, involved any searches, any seizure of evidence or any arrests (or, for that matter, any other conduct even remotely approaching any such activity). Wausau nevertheless urges that the mere·*existence* of such powers in EPA personnel is enough to trigger operation of the proviso.

But Wausau's arguments on that score are wholly unpersuasive:

    1. First Wausau points to CERCLA § 9606(a) as permitting EPA to "require the Attorney General of the United States to secure such relief as may be necessary to abate" what the same section labels as "an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." To begin with, that is a somewhat misleading quotation from CERCLA § 9606(a).[4] But even if

---

**3.** Both the length of that memorandum and Wausau's continuing wrangles over the discretionary function issues during the past several months have demonstrated just how clouded this Court's crystal ball had been in assuming that its bifurcated approach was likely to simplify matters.

**4.** In fact the statute provides that when the *President* determines that there may be an imminent and substantial endangerment of the nature described in the second quoted phrase, the *President* may require the Attorney General to take the action referred to in the first quoted phrase. In turn the President issued an Executive Order on January 23, 1987 delegating some of those func-

tions to the Coast Guard and some to EPA, at the same time requiring that certain authority be exercised only with the Attorney General's concurrence and retaining certain authority to the President personally (Ex.Ord. No. 12580, set out as a note under 42 U.S.C.A. § 9615). This opinion will not pause to consider whether limited powers delegated to EPA in that fashion necessarily give rise to the same conclusion on the issue now before this Court as if Congress itself had deliberately conferred those powers on EPA—for as the text demonstrates, Wausau's legal position is an empty one even when taken in the most favorable light.

the statement is viewed as an accurate portrayal of EPA's powers, it is of course absurd to suggest that simply because EPA might be able to enlist the government's premier law enforcement officer to carry out CERCLA's statutory purposes, that would somehow convert EPA's people *themselves* into law enforcement officers. If anything, the conclusion to be drawn from that provision (even as Wausau portrays it) would point in exactly the opposite direction, for it would tend to confirm the nonexistence of such power in the EPA people on their own.

2. Wausau seeks to bootstrap from that same statutory provision (thus necessarily resting on a foundation built on sand) by pointing to this excerpt (found in S.Rep. No. 98–351, 98th Cong., 2d Sess. 51 (1984)), *reprinted in* 1984 U.S. C.C.A.N. from the legislative history of the predecessor to CERCLA, the Resource Conservation and Recovery Act:

> As under other environmental statutes, EPA has inherent authority under RCRA to initiate and conduct investigations under the criminal provisions of the statute and to refer the results of these investigations to the Attorney General for prosecution in appropriate cases.

But as will be discussed in a moment or two, it is not a fair reading of the Section 2680(h) proviso to treat the potential of investigative activity looking toward a *criminal* prosecution (that is, law enforcement activities in the traditional sense) by others as somehow triggering liability for claimed malicious prosecution and abuse of process for EPA's own purely *civil* activities that are not traditionally within the purview of law enforcement officers.

3. Next Wausau Mem. 43 argues:

> Second, the EPA was empowered to conduct searches, seize evidence and make arrests in this case in connection with CERCLA § 107(a) because, upon information and belief, the EPA investigators who actually conducted the liability investigation to identify PRPs were trained criminal investigators.

That non sequitur belongs in what the *New Yorker* magazine sometimes labels the Department of Clotted Nonsense. Wausau's reasoning (?)—by seeking to transmute prior *training* into current *authority*— would effectively convert former FBI agents into "investigative or law enforcement officers" for statutory purposes for the rest of their lives, no matter by whom (perhaps even private security firms?) or in what capacity they were employed. It would certainly do wonders for the private-eye business if anyone were able to hire an ex-FBI agent "to conduct searches, seize evidence and make arrests" without fear of being charged with illegal conduct. Only a moment's reflection demonstrates the absurdity of Wausau's position.

4. Implicit in that last contention is the notion that the need for EPA to reach the decisions involved in discharging its statutory responsibilities under CERCLA necessarily makes its personnel "investigative officers" so as to call the Section 2680(h) proviso into play. But that notion really proves too much. If that were truly the case, *every* governmental agency that reaches *any* decision (except perhaps a totally arbitrary ipse dixit conclusion) would come within the proviso. Surely the mere need for an agency to learn the facts necessary to exercise the statutory responsibilities with which that agency is charged cannot serve as the litmus test for labeling its personnel "investigative officers" for Section 2680(h) purposes.

Nor, as the ensuing text shows, is Wausau's extremist position justified by the court decisions dealing with the statutory proviso to Section 2680(h).

At the outset of this discussion of case law, a word must be said about one disturbing aspect of Wausau's briefing on that score. Its memorandum cites this Court to two Court of Appeals decisions (the reading of which discloses that they really do not call for the conclusion advanced by Wausau) and two District Court decisions. But Wausau wholly fails to mention in its discussion of the cases that the one Court of Appeals that has dealt *directly* with the question posed here (the Third Circuit) has held squarely against

the position that Wausau advances. And there can be no question that Wausau knew that—for both of the District Court decisions that it does cite referred expressly to the Third Circuit decision, voiced their disagreement with it and declined to follow it. Did Wausau's lawyers think that this Court would simply read what its memorandum said about the cases, rather than reading the cases themselves? It is true that such non-disclosure does not violate Rule 3.3(a)(3) of this District Court's Rules of Professional Conduct (because the directly adverse authority from another Circuit does not bind this Court), but the lawyers' responsibility of candor to the tribunal should have caused Wausau's lawyers at least to point out the existence of the adverse authority in their memorandum (of course making clear their disagreement with its ruling).

To turn to the merits: Though this Court is not of the school that looks to the legislative history and then, only if that history is ambiguous, resorts to the statutory language, in this instance the history of the proviso justifies brief mention because it confirms the natural reading of the statute. That proviso was inserted by the Senate late in the enactment process of wide-ranging legislation of which the proviso was only a small piece. It was triggered by a notorious instance of what was viewed as governmental abuse in the context of no-knock raids. Thus the relevant legislative history is brief indeed (S.Rep. No. 93-588, 93d Cong., 2d Sess. 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2791):

> The Committee amendment to the bill, contained in a new section 2 thereof, would add a *proviso* at the end of the intentional torts exception to the Federal Tort Claims Act (28 U.S.C. 2680(h)). The effect of this provision is to deprive the Federal Government of the defense of sovereign immunity in cases in which Federal law enforcement agents, acting within the scope of their employment, or under color of Federal law, *commit any of the following torts:* assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process. Thus, after the date of enact-

ment of this measure, innocent individuals who are subjected to raids of the type conducted in Collinsville, Illinois, will have a cause of action against the individual Federal agents and the Federal Government. Furthermore, this provision should be viewed as a counterpart to the *Bivens* case and its progeny, in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved).

\*   \*   \*   \*   \*   \*

This whole matter was brought to the attention of the Committee in the context of the Collinsville raids, where the law enforcement abuses involved Fourth Amendment constitutional torts. Therefore, the Committee amendment would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause. However, the Committee's amendment should not be viewed as limited to constitutional tort situations but would apply to any case in which a Federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law.[5]

As already suggested here, *Pooler v. United States,* 787 F.2d 868, 871–72 (3d Cir.1986) is the only Court of Appeals decision that has directly decided the issue posed here: whether the fact that employees of an agency may have the powers of "investigative and law enforcement officers"—searches, seizures and arrests—in *some* contexts automatically renders *all* of the agency's activities, though carried out in the course of wholly different non-investigative and non-law-enforcement activities, subject to FTCA suits for claimed malicious prosecution, abuse of process and other intentional torts that would otherwise

5. [Footnote by this Court] After the Senate had added the amendment, the House reconsidered the bill with that amendment and passed it with-

out referring it to a House committee for consideration and without the issuance of any report.

be excluded from coverage under Section 2680(h). *Pooler, id.* at 872 flatly rejected that counterintuitive position, stating a requirement of one-to-one correlation between the *exercise* of those investigative and law enforcement powers and the particular complaint of governmental abuse in doing so:

> In this case, Pooler's and Bradley's complaints, read in the light most favorable to them, charge that Kimmel is an officer of the ·United States "empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law." 28 U.S.C. § 2680(h). No matter how generously we read them, however, the complaints do not charge that Kimmel committed an intentional tort while executing a search, seizing evidence, or making an arrest. We read the 1974 amendment to section 2680(h) as addressing the problem of intentionally tortious conduct occurring in the course of the specified government activities. It is in the course of such activities that government agents come most directly in contact with members of the public. The government places them in such a position, thereby exposing the public to a risk that intentionally tortious conduct may occur. That Congress intended to deal only with conduct in the course of a search, a seizure, or an arrest is confirmed by the sparse legislative history of the 1974 amendment. The Senate Report on the amendment states that the proviso was enacted to provide a remedy against the United States in situations where law enforcement officers conduct "no-knock" raids or otherwise violate the fourth amendment. *See* S.Rep. No. 588, 93d Cong., 2d Sess. 2–3 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2789, . 2790–91.

Not only is *Pooler* the single direct decision from an appellate court on the question, but it is also the most recent of the Court of Appeals decisions that are even arguably relevant to the issue. But this Court need not subscribe to the strict view of the statute that was adopted in *Pooler* to reject Wausau's position here. Instead the fair reading of the Section 2680(h) proviso is that even if the FTCA action for such intentional torts is not based on an actual search or seizure of evidence or arrest, it must at a minimum charge the government with wrongdoing based on "acts or omissions of investigative or law enforcement officers" *while they are engaged in investigative or law enforcement activities.* And for that purpose, "investigative" must be given its normal meaning (akin to that when it is employed in such terms as "private investigator"), not just the generic sense that Wausau suggests—that of simply looking into and thinking about something in the process of reaching a decision. It is scarcely coincidental that the only two references in Senate Report 93–588 to the types of federal employees whose conduct was made actionable against the government by the Section 2680(h) proviso spoke solely of "Federal law enforcement agents"—a clear signal that the statutory inclusion of "investigative" as well as "law enforcement" activities was intended to refer to the kinds of "investigative" activities that are carried out by *law enforcement* officers.

This view of the statute is not only its most reasonable construction in common-sense terms, but it also avoids converting the statutory proviso into one that is triggered by mere status rather than by actual conduct. Moreover, the just-articulated reading reconciles the few cases on which Wausau seeks to rely that have held that the Section 2680(h) proviso waived sovereign immunity, including the two District Court decisions that differ with the far more restrictive construction announced by *Pooler.*[6] Here they are:

1. *Sami v. United States,* 617 F.2d 755, 763–64 (D.C.Cir.1979) did not subscribe to the narrow construction of the proviso later adopted in *Pooler.* But the actual activity that *Sami* held to be within the Section 2680(h) proviso was clearly of the type that is considered as law enforcement in the traditional and commonly under-

---

**6.** Of course it is not necessary to explain away those District Court decisions. We are reminded from time to time by our own Court of Appeals that district judges do not make precedent. If this Court's views differ from those of another district judge, it is enough to voice respectful disagreement. That would seem especially appropriate when the other district judge himself disagrees with the only Court of Appeals decision on point.

stood sense. That activity was simply being engaged in by the higher-ups in such a law enforcement organization, rather than by the type of front-line person who is assigned to conduct searches, seizures and arrests.

2. *Wright v. United States,* 719 F.2d 1032, 1035–36 (9th Cir.1983) engaged in a sketchy discussion of the Section 2680(h) amendment (but recited its legislative history, *id.* at 1036 n. 2) en route to applying it in a manner entirely consistent with what has been said here. Indeed, in the very next year the same judge who wrote *Wright,* Honorable William Canby, wrote another opinion (*Arnsberg v. United States,* 757 F.2d 971, 976–78 (9th Cir. 1984))[7] that expressly confirms the scope of the proviso in precisely the same terms as the analysis set out in this opinion (see *id.* at 978 n. 5, stating in part, "We are confident, however, that Congress intended § 2680 to apply only when the federal official acts in his or her investigative or law enforcement activity.").

3. Each of *Crow v. United States,* 659 F.Supp. 556, 570–71 (D.Kan.1987) and *Harris v. United States,* 677 F.Supp. 403, 404–06 (W.D.N.C.1988) declined to follow the narrow *Pooler* reading of the Section 2680(h) proviso. But both *Crow* and *Harris* involved law enforcement officers engaged in classical law enforcement activities (though not actually in any search, seizure or arrest). Thus nothing in those holdings is at all inconsistent with the views stated here.[8]

In short, either under the construction that this Court finds most reasonable or (a fortiori) under the more restrictive reading of *Pooler,* Wausau's attempted claims of malicious prosecution and false arrest are barred by the United States' sovereign immunity— excluded by the original prohibition of Section 2680(h) and not revived by the proviso to that statute. Complaint Counts I and II are

therefore dismissed for lack of subject matter jurisdiction. Accordingly the United States' reply memorandum need only address the discretionary function issues under Section 2680(a).

This Court has already advised counsel for the parties of the conclusion reached in this opinion via a conference telephone call on February 23. In the course of that conversation, government counsel requested an extension of time to March 31, 1993 to file the reply memorandum. That motion is granted.

---

7. *Arnsberg* was not among the cases that Wausau cited in its memorandum. This time, however, its lawyers will be given the benefit of the doubt in assuming that they may not have researched the matter sufficiently to have led them to *Arnsberg.* Even though this Court located *Arnsberg* as well as reviewing all the relevant authorities in the space of an hour's research, Wausau's coun-

sel's presumed failure to do so is not at all comparable to their nondisclosure of *Pooler* referred to earlier.

8. And even it were otherwise, this Court would of course be free to disagree with them.