Daniel P. MURPHY, Plaintiff,

v.

UNITED STATES of America.

No. CIV.A. 99–2729(JR).

United States District Court,
District of Columbia.

Sept. 29, 2000.

Roy W. Krieger, Paleos & Krieger, P.C., Washington, DC, for plaintiff.

Meredith Manning, Assist. U.S. Atty., Washington, DC, for U.S.

### MEMORANDUM

ROBERTSON, District Judge.

In this Federal Tort Claims Act suit, a veteran secret service agent seeks dam-

ages for an alleged assault by his supervisor and for several other common law torts. Plaintiff has also amended his complaint to assert Privacy Act violations stemming from the alleged assault and the subsequent investigation. The government moves to dismiss. The motion will be granted in part and denied in part, for the reasons set forth below.

*Facts*

The following facts, drawn exclusively from plaintiff's complaint, are taken as true for purposes of this motion: Plaintiff Daniel P. Murphy has been a Special Agent (SA) of the United States Secret Service since 1984. At all times relevant to this lawsuit, he was one of three SAs assigned to the Secret Service Portland, Maine, Residence Agency (PRA). The other Portland SSAs were Kevin T. Flynn and Resident Agent Supervisor (RAS) Michael D. Magalski. This entire lawsuit stems from a work-related dispute between RAS Magalski and SA Murphy.

On February 26, 1998, RAS Magalski walked into SA Murphy's office to give him an assignment. SA Murphy refused to perform the assignment, stating that he was working on another task and that, in any event, the assignment "presented little involvement in the PRA district." Upon hearing SA Murphy's refusal, RAS Magalski "exploded in anger and delivered a tirade of profanity directed at Plaintiff, punctuated by instances of finger jabbing . . . toward Plaintiff." This episode culminated in "RAS Magalski advancing towards Plaintiff and physically challenging him with the statement, '[w]hat the fuck are you going to do about it?'"

The next day, SA Murphy sent an e-mail to RAS Magalski complaining about this incident and about several other incidents of abusive behavior by RAS Magalski towards himself and Mr. Flynn. RAS Magalski forwarded a copy of the e-mail with an attached notation denying wrongdoing to Special Agent–in–Charge (SAIC) Michael Johnston, the superior of both men

located at the Secret Service's Boston Field Office (BFO). By this time, SA Murphy had retained counsel, and his counsel sent a letter to SAIC Johnson describing RAS Magalski's misconduct and demanding immediate action. SAIC Johnson conducted an investigation into the matter. He ultimately determined that SA Murphy's allegations had no basis, and recommended that SA Murphy be transferred to a different field office to avoid future problems.

What followed was an extended correspondence between SA Murphy's counsel and various higher-ups in the Secret Service. At the behest of SA Murphy's counsel, the Secret Service conducted additional investigations to determine whether SA Murphy's allegations had any basis in fact, each time determining that they did not. The end result was that SA Murphy was transferred to the Secret Service's New York Field Office—a "hardship assignment" for Secret Service agents.

SA Murphy asserts that the government is subject to suit under the FTCA because he was "assaulted" by a United States law enforcement officer acting within the scope of his employment. He also asserts that the United States: (1) negligently failed to act upon his disclosures of misconduct by RAS Magalski; (2) negligently failed to investigate his disclosures; (3) negligently entrusted RAS Magalski with a position of authority; (4) negligently failed to supervise and manage RAS Magalski; and (5) negligently misrepresented information about him.

SA Murphy further alleges that the Secret Service violated the Privacy Act by failing to maintain accurate, timely and complete records about him, and he alleges that the inaccurate records resulted in his transfer to the New York Field Office, which transfer has damaged his career, reputation, and income. The relief he seeks under the Privacy Act is amendment of the offending records and damages in the amount of $500,000.

## Analysis

### A. FTCA Claim

The FTCA, 28 U.S.C. §§ 1347, 2671–80, is not a general waiver of the sovereign immunity of the United States with respect to intentional torts, but it contains an express waiver for "acts or omissions of investigative or law enforcement officers of the United States Government" arising out of any claim "of assault [or] battery." *Id.* § 2680(h). The term "investigative or law enforcement officer" is defined for this purpose as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

■■■ The government submits that § 2680(h) does not apply in this case, because RAS Magalski was acting as a supervisor at the time of the alleged assault. SA Murphy responds that this reading of the so-called "law enforcement proviso" is too restrictive, and that all he must show in order to maintain his claim is that RAS Magalski was a law enforcement officer and that he committed an assault while acting within the scope of his employment.

The only appellate decision that has actually ruled on the scope of the law enforcement proviso is *Pooler v. United States*, 787 F.2d 868 (3d Cir.1986). That decision construed the proviso narrowly, holding that it applies only to "conduct in the course of a search, a seizure, or an arrest." *Id.* at 872. The court relied on legislative history emphasizing an "inten[tion] to provide a remedy against the United States in situations where law enforcement officers conduct 'no-knock' raids or otherwise violate the Fourth Amendment." *Id.* "[I]t is in the course of such activities," the court reasoned, "that government agents come most directly in contact with members of the public." *Id.*

The majority of the trial courts not bound by *Pooler* have declined to follow the Third Circuit's interpretation. *See, e.g., Ortiz v. Pearson,* 88 F.Supp.2d 151, 164–65 (S.D.N.Y.2000) (criticizing *Pooler* as lacking "principled underpinning" and holding that the proviso does not require that the law enforcement officer be engaged in one of the enumerated acts at the time of the alleged wrongdoing); *Harris v. United States,* 677 F.Supp. 403, 405 (W.D.N.C.1988) (rejecting *Pooler* as "in error" and holding that the proviso waives governmental immunity for certain intentional torts committed by any of its agents who have the authority to execute searches, seize evidence or make arrests). *But see Wood v. United States,* No. 92 Civ. 0247, 1993 WL 177821 at *1 (S.D.N.Y. May 17, 1993) (following *Pooler*). The *Ortiz* court reasoned that the statute's references to searches, seizures and arrests was an attempt to "define who may be considered a federal law enforcement officer," 88 F.Supp.2d at 164, rather than a limitation of governmental liability to actions taken while engaging in those particular acts.

Neither *Pooler*'s restrictive view nor the more expansive reading of *Ortiz* and *Harris* is fully satisfying. *Pooler*'s holding appears unduly narrow, because its flat requirement that the law enforcement officer be engaged in a specific kind of law enforcement activity at the time of the tort is at odds with the broad language of the statute. The decisions that disregard the context of the alleged tort, however, broaden the law enforcement focus of the proviso to reach situations that have nothing to do with the unlawful exercise of police power.

A decision of the Northern District of Illinois adopts an intermediate position that effectively mediates between these two extremes. In *Employers Ins. of Wausau v. United States,* 815 F.Supp. 255 (N.D.Ill.1993), the court declined to adopt the strict *Pooler* view, but still rejected the plaintiff's FTCA challenge on well-supported prudential grounds. The court held:

> the fair reading of the Section 2680(h) proviso is that even if the FTCA action for such intentional torts is not based on

an actual search or seizure of evidence or arrest, *it must at a minimum charge the government with wrongdoing based on 'acts or omissions of investigative or law enforcement officers' while they are engaged in investigative or law enforcement activities.* And for that purpose, 'investigative' must be given its normal meaning (akin to that when it is employed in such terms as 'private investigator'), not just the generic sense that [plaintiff] suggests—that of simply looking into and thinking about something in the process of reaching a decision.

*Id.* at 259 (emphasis added). Under this view, lawsuits could proceed against the government—even if the tortfeasor were not engaged in one of the three enumerated law enforcement activities—so long as the alleged wrongdoing took place in the context of law enforcement activity.

This approach allows legitimate complaints against law enforcement officers to proceed against the United States while ensuring that incidents stemming from non-law enforcement related activities are not covered. It is consistent with the legislative history's emphasis on law enforcement abuses against ordinary citizens, such as "no-knock" raids and Fourth Amendment violations. *See* S.Rep. No. 588, 93d Cong., 2d Sess. 2–3 (1974), 1974 U.S.C.C.A.N. 2789; *United States v. Shearer,* 473 U.S. 52, 56 & n. 2, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). And it does not "convert[ ] the statutory proviso into one that is triggered by mere status rather than by actual conduct." *Wausau,* 815 F.Supp. at 259.

The balanced approach of the *Wausau* decision is also consistent with the only decision in this Circuit to interpret the proviso. In *Sami v. United States,* 617 F.2d 755 (D.C.Cir.1979), the Court of Appeals declined to limit the definition of "investigative or law enforcement officer" to someone engaged in those duties at the time of the alleged tort. However, it emphasized that "Congress set finite boundaries around the kind of *law enforcement abuses* for which it wished to make the government liable," *id.* at 765, and noted that "[w]e deduce from th[e] [Senate] report an intent to 'provid[e] a remedy against the Federal Government for *innocent victims of Federal law enforcement abuses,*'" *id.* (citation omitted) (emphasis added). The *Sami* court did not decide whether the plaintiff stated an actionable claim under the proviso, but the plain import of the underscored language is that the proviso relates to an abuse in the law enforcement context.

■ Applying the rule of the *Wausau* decision to the facts of the instant case, Mr. Murphy's assault-based claim must be dismissed. The alleged assault did not arise while RAS Magalski was "engaged in investigative or law enforcement activities," as those terms are traditionally understood. Rather, it arose out of a workplace dispute between a supervisor and an employee over who would perform a work assignment. A workplace dispute between a government supervisor and a government employee does not fall within the law enforcement proviso to the FTCA. *Cf. United States v. Shearer,* 473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (intentional tort exception shields government from liability where "some agent of the Government gets in a fight with some fellow ... [a]nd socks him.") (dicta) (citation omitted).

B. *Negligence Claims*

The government asserts that Mr. Murphy's common law causes of action concerning the nature, timing and conduct of the follow-up investigation are barred by the discretionary function exception to the FTCA. Mr. Murphy responds that the Secret Service cannot take refuge in this exception because it violated its own internal policies.

■ The Supreme Court has established a two-part test to determine whether an action is exempt from suit under the discretionary function exception. *See*

*United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). First, the court must determine whether any "federal statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow." *Id.* at 322, 111 S.Ct. 1267. If a specific directive exists, then the sole and determinative inquiry for governmental liability is whether that directive was followed. *See id.*

■ If no specific directive exists, the court must apply the second part: whether the challenged discretionary acts of a government employee "are of the nature and quality that Congress intended to shield from liability." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Decisions that require choice are exempt from suit under the FTCA only if they are "susceptible to policy judgment" and involve the exercise of "political, social [or] economic judgment." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267. The "focus on the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and whether they are susceptible to policy analysis." *Id.* at 326, 111 S.Ct. 1267.

■ Mr. Murphy points to various provisions from a Secret Service manual discussing internal investigations in an apparent effort to identify a "specific directive" that was violated. There are two problems with his theory. First, internal regulations that are merely intended to provide guidance to employees do not have the force and effect of law and are not binding on the United States. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).[1] Second, even assuming that these regulations are binding on the United States, Mr. Murphy has not identified any one of them that squarely

applies in this case and was violated. The internal regulations he cites "do not contain directives so precise that they constrain" the manner in which the Secret Service may conduct investigations, *Cope v. Scott,* 45 F.3d 445, 450 (D.C.Cir.1995), but instead include permissive, non-binding language that appears to confer substantial discretion on agency investigators.

■ With respect to the second part of the test, it is settled law in this Circuit that "prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." *Gray v. Bell,* 712 F.2d 490, 513 (D.C.Cir. 1983); *see also Moore v. Valder,* 65 F.3d 189, 197 (D.C.Cir.1995). Analogously, investigatory decisions must at a minimum be afforded a presumption that they too are discretionary in nature.

■ The decisions the Secret Service made in this case about how to conduct the investigation into Mr. Murphy's charges necessarily involved policy choices "fraught with" social judgments involving personnel management and the use of investigatory resources. *Varig,* 467 U.S. at 814, 104 S.Ct. 2755. Although the Secret Service may not have "exercise[d] the best judgment" in addressing SA Murphy's allegations against RAS Magalski, "Congress has provided that the Court may not 'second guess' those types of judgments by way of a tort action." *W.C. & A.N. Miller Companies v. United States,* 963 F.Supp. 1231, 1240 (D.D.C.1997).

## C. *Additional Common–Law Tort Claims*

In his opposition, SA Murphy alleges two new tort claims—intentional infliction

---

**1.** Indeed, in *Moore v. Valder,* 65 F.3d 189, 197 n. 15 (D.C.Cir.1995), the court remarked: "[p]utting aside the question whether this regulation creates any enforceable right, we note

that deciding what this regulation requires under a specific set of circumstances is itself a discretionary act."

of emotional distress and invasion of privacy—that he did not include in his administrative complaint.

■ Intentional infliction of emotional distress is, of course, an intentional tort. It is barred by the intentional torts exception to the FTCA for the reasons stated *supra.*

■ Contrary to the government's assertion in its supplemental memorandum,[2] however, invasion of privacy does not appear to be an intentional tort in this jurisdiction, *see Kitt v. Capital Concerts, Inc.,* 742 A.2d 856, 859 (D.C.1999) (setting forth elements). It is therefore necessary to consider whether Mr. Murphy complied with 28 U.S.C. § 2675(a) in presenting this claim to the Secret Service.

The standard for administrative presentment of FTCA claims was announced in *GAF Corp. v. United States,* 818 F.2d 901, 919 (D.C.Cir.1987): "Section 2675(a) requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." The court in *GAF* rejected a more stringent presentment standard that would have required proof of each claim, and instead required only that the agency provide sufficient "notice" of the claims to "enable the agency to investigate and ascertain the strength of a claim." *Id.*

■ To establish liability for the tort of invasion of privacy, a plaintiff must show: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; (4) which places the plaintiff in a false light that would be offensive to a reasonable person. *Kitt,* 742 A.2d at 859. These elements demand markedly different factual evidence than those of common law

assault or negligence. The allegations in Mr. Murphy's complaint thus did not provide notice of an invasion of privacy claim, even under the fairly liberal standard announced in *GAF.*[3] 818 F.2d at 921; *see also Bembenista v. United States,* 866 F.2d 493, 498 (D.C.Cir.1989); *Orlando Helicopter Airways v. U.S.,* 75 F.3d 622, 626 (11th Cir.1996).

\*　　\*　　\*　　\*　　\*　　\*

It unnecessary to address the government's further arguments that SA Murphy's common law claims are barred because they arose out of the assault or because they are not cognizable under District of Columbia law. It is also unnecessary to address the government's argument that venue in this district is improper.

## D. *The Privacy Act Claims*

SA Murphy's amended complaint demands that the agency's records about him be amended to correct inaccuracies and seeks damages on the theory that his transfer to the New York Field Office was caused by the inaccurate record and was retaliatory. Limitations on this court's jurisdiction require dismissal of all but one of these claims.

■ The Privacy Act requires an individual seeking amendment of a record to follow the procedures outlined in §§ 552a(d)(2) and 552a(d)(3), namely, to request amendment of the record by the agency and then, if the request is denied, to request review of that denial. An individual who fails to exhaust these administrative remedies is precluded from seeking review in this court. *Haase v. Sessions,* 893 F.2d 370, 373 (D.C.Cir.1990). Plaintiff admits that he did not seek agency review of his records under the Privacy Act but argues that his submission of the adminis-

---

**2.** At oral argument on May 3, 2000, I invited both parties to submit supplemental memoranda on the question of whether Mr. Murphy may now allege additional torts that were not expressly identified in his administrative claim to the Secret Service.

**3.** Neither party appears to have included the actual administrative complaint in its filings. The Court accepts as true plaintiff's statements about its content.

**28**

trative Federal Tort Claims Act claim was substantial compliance or, in the alternative, that his noncompliance should be excused on futility grounds.

■ These arguments are without merit. Plaintiff asserts that his FTCA "administrative claim clearly stated his contention that the Secret Service was negligent in its investigation and records" related to the alleged assault. Plaintiff relies on *Liguori v. Alexander*, 495 F.Supp. 641, 646 (S.D.N.Y.1980), where "[t]he parties agree that plaintiff orally asked Major Glisson, the custodian of personnel records, to delete certain portions of his employee record card," but in this case there is no claim that plaintiff asked the Secret Service to amend his record. A demand for damages under FTCA is not a request for record amendment under the Privacy Act. *See Blazy v. Tenet*, 979 F.Supp. 10, 18 (D.D.C.1997) ("[N]o suit will lie until subsection (d)(3) has been invoked and the explicit steps of the statue followed."); *Dickson v. Office of Personnel Management*, 828 F.2d 32, 40 (D.C.Cir. 1987) (finding Privacy Act claim barred where plaintiff had not followed the express statutory procedures).

■ Plaintiff's belief that resort to administrative remedies would be futile does not excuse his failure to exhaust. In a Privacy Act case, exhaustion is an express statutory prerequisite to the exercise of jurisdiction by a federal court and "vague and conclusory allegations.... provide no basis for us to short-circuit" the exhaustion requirement. *Schuler v. United States*, 617 F.2d 605, 609 (D.C.Cir.1979) (rejecting futility defense where plaintiff claimed past unsuccessful attempts to have records amended through non-Privacy Act channels evidenced futility); *see also Dickson*, 828 F.2d at 40 (rejecting futility defense).

■ Plaintiff's failure to exhaust administrative remedies does not bar his claim that his transfer to the New York Field Office was the result of inaccurate records and that he was damaged by the transfer. The Privacy Act permits an individual to "recover damages for an adverse personnel action actually caused by an inaccurate or incomplete record." *Hubbard v. U.S. Environmental Protection Agency*, 809 F.2d 1, 5 (D.C.Cir.1986). This claim for damages presents daunting problems of proof for the plaintiff. In order to prevail, he will have to establish, not only that the records were inaccurate,[4] but that it was the inaccuracy of the records— rather than the underlying events—that caused his alleged injury. These proof problems are not addressable on a motion to dismiss, however.

■ Plaintiff's claim that his transfer was retaliatory is precluded by the Civil Service Reform Act (CSRA). The CSRA "deprives the district court of jurisdiction to review prohibited personnel practices." *Hubbard*, 809 F.2d at 5.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this day of September 2000,

**ORDERED** that defendant's motion to dismiss [# 2][# 15] is **granted** as to Count I of the amended complaint and **granted in part and denied in part** as to Count II of the amended complaint.

---

4. *A record that accurately sets forth observations made and opinions held, is an accurate* record—even if the observations are faulty and the opinions disputed.