PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NICHOLAS IGNACIO,

      *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

      *Defendant-Appellee.*

No. 10-2149

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Liam O'Grady, District Judge.
(1:09-cv-01178-LO-TRJ)

Argued: December 7, 2011

Decided: March 16, 2012

Before SHEDD, DIAZ, and FLOYD, Circuit Judges.

Reversed and remanded by published opinion. Judge Floyd wrote the opinion, in which Judge Shedd and Judge Diaz joined. Judge Diaz wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Stephen Michael Terpak, TERPAK AND ASSO-CIATES, PLLC, Arlington, Virginia, for Appellant. R. Joseph Sher, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. Mac-

Bride, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

FLOYD, Circuit Judge:

Kevin Lane, a Pentagon police officer, allegedly assaulted Nicholas Ignacio, a contract security officer assigned to the Pentagon, while they were stationed at a security checkpoint for Pentagon employees. Ignacio sued the United States for assault under the Federal Tort Claims Act (FTCA). The district court granted summary judgment to the United States, holding that because Lane was not "engaged in investigative or law enforcement activities" when he allegedly assaulted Ignacio, the United States retained sovereign immunity from his claims. Ignacio now appeals.

We hold that 28 U.S.C. § 2680(h) waives the United States' sovereign immunity regardless of whether an officer is engaged in an investigative or law enforcement activity when he commits an assault. Accordingly, we reverse and remand for further proceedings.

I.

A.

The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Of particular relevance here is (1) the Act's intentional torts exception, which retains the United States' immunity in cases involving "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract

rights," 28 U.S.C. § 2680(h), and (2) an exception to the intentional torts exception, commonly known as "the law enforcement proviso," which preserves the waiver of immunity when certain named intentional torts are "acts or omissions of investigative or law enforcement officers of the United States Government."\**Id.*

## B.

On December 2, 2009, while stationed at a security checkpoint for Pentagon employees, Lane and Ignacio had a disagreement over the caliber of an M-16 round. Initially, their disagreement led only to a bet. It escalated, however, on December 15, when they were again stationed at a security checkpoint for Pentagon employees. Lane allegedly told Ignacio that he would "hurt him after work" and then pretended to punch him in the face. As a result, Lane's superior suspended him for ten days.

Ignacio subsequently sued the United States under the FTCA for assault. The United States moved for summary judgment, arguing that the FTCA's waiver of sovereign immunity did not apply because Lane's assault did not occur (1) within the scope of his employment or (2) within the course of law enforcement activity.

The district court granted the government's motion. Concluding that issues of fact existed regarding whether Lane acted within the scope of his employment under Virginia law, the district court declined to grant summary judgment on that basis. Instead, it held that the law enforcement proviso waives immunity only when a law enforcement officer commits a

---

\*"For the purpose of [§ 2680(h)], 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Here, the parties do not dispute that Lane qualifies as an "investigative or law enforcement officer."

specified tort while "engaged in investigative or law enforce-
ment activities." Accordingly, it dismissed Ignacio's claims
because it found as a matter of law that Lane was not engaged
in investigative or law enforcement activities during the
assault. On appeal, Ignacio argues that the law enforcement
proviso waives immunity whenever a law enforcement officer
acting within the scope of his employment commits an inten-
tional tort and that the district court erred in requiring that the
officer commit the tort in the course of an investigative or law
enforcement activity. We agree.

## II.

We review questions of statutory interpretation de novo.
*United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). "The
starting point for any issue of statutory interpretation . . . is
the language of the statute itself." *United States v. Bly*, 510
F.3d 453, 460 (4th Cir. 2007). "In that regard, we must first
determine whether the language at issue has a plain and
unambiguous meaning with regard to the particular dispute
. . . and our inquiry must cease if the statutory language is
unambiguous and the statutory scheme is coherent and consis-
tent." *Id.* (omission in original) (quoting *United States v.
Hayes*, 482 F.3d 749, 752 (4th Cir. 2007), *rev'd on other
grounds*, 555 U.S. 415 (2009)) (internal quotation marks
omitted). "We determine the 'plainness or ambiguity of statu-
tory language . . . by reference to the language itself, the spe-
cific context in which that language is used, and the broader
context of the statute as a whole.'" *United States v.
Thompson-Riviere*, 561 F.3d 345, 354–55 (4th Cir. 2009)
(omission in original) (quoting *Robinson v. Shell Oil Co.*, 519
U.S. 337, 341 (1997)).

The portion of the FTCA pertinent to this case reads as fol-
lows:

> The provisions of this chapter [that waive sovereign
> immunity] and section 1346(b) shall not apply to—

. . .

> . . . Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h).

The plain language of the law enforcement proviso stipulates two conditions for its application: (1) an individual fitting the definition of an "investigative or law enforcement officer" must commit an intentional tort, and (2) the claim must arise "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *See Harris v. United States*, 677 F. Supp. 403, 405 (W.D.N.C. 1988). Notably absent is language requiring an officer to commit the tort in the course of an investigative or law enforcement activity or, for that matter, any language regarding the context in which an officer must commit the tort. *Id.*

"[C]ourts must construe statutes as written, [and] not add words of their own choosing," *Barbour v. Int'l Union*, 640 F.3d 599, 623 (4th Cir. 2011) (en banc) (Agee, J., concurring in the judgment); *see also United States v. Deluxe Cleaners & Laundry, Inc.*, 511 F.2d 926, 929 (4th Cir. 1975) ("[W]e do not think it permissible to construe a statute on the basis of a mere surmise as to what the Legislature intended and to assume that it was only by inadvertence that it failed to state something other than what it plainly stated." (quoting *Vroon*

*v. Templin*, 278 F.2d 345, 348–49 (4th Cir. 1960)) (internal quotation marks omitted)). Accordingly, we decline to import a requirement that an officer commit the tort in the course of an investigative or law enforcement activity and hold instead that the law enforcement proviso waives immunity whenever the two conditions specified by the plain language are satisfied.

We hasten to note that the proviso does not relax the FTCA's jurisdictional mandate requiring that torts be committed within the scope of employment, nor does it alter the FTCA's reliance on applicable state law, which also generally includes a scope of employment requirement, as the basis for defining an underlying cause of action. *See* 28 U.S.C. § 1346(b)(1); *Kerns v. United States*, 585 F.3d 187, 194–95 (4th Cir. 2009). Rather, the proviso declares that "the provisions of [Chapter 171] and section 1346(b) . . . shall apply" when any one of six named torts is committed by an investigative or law enforcement officer. § 2680(h). We are confident that had Congress intended to impose an additional hurdle for litigants bringing claims against the United States for torts committed by its investigative and law enforcement officers, it would have explicitly stated as much.

We recognize that district courts and some of our sister circuits have imported an additional bar based on analyses of the proviso's legislative history and concerns that disparate treatment of federal employees may result if the proviso applies too broadly. *See, e.g.*, *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1133-35 (9th Cir. 2001); *Pooler v. United States*, 787 F.2d 868, 871-72 (3d Cir. 1986); *Murphy v. United States*, 121 F. Supp. 2d 21, 24-25 (D.D.C. 2000); *Emp'rs Ins. of Wausau v. United States*, 815 F. Supp. 255, 257-60 (N.D. Ill. 1993). Nevertheless, we note that these courts relented to secondary modes of interpretation without first establishing the ambiguity of the statutory text. Where, as here, the text of the statute is unambiguous, we should not engage in an analysis of legislative history to find ambiguity. *Conn. Nat'l Bank v.*

*Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citations omitted) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))). Accordingly, we hold that 28 U.S.C. § 2680(h) waives immunity whenever an investigative or law enforcement officer commits one of the specified intentional torts, regardless of whether the officer is engaged in investigative or law enforcement activity.

## III.

Because the district court determined that issues of fact exist regarding whether Lane acted within the scope of his employment under Virginia law, and because the parties did not raise the scope of employment issue in their briefs, we decline to discuss it here.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

*REVERSED AND REMANDED*

DIAZ, Circuit Judge, concurring:

I join in full Judge Floyd's well-reasoned opinion but write separately to address the troubling inconsistency produced by application of the Federal Torts Claim Act ("FTCA") provisions at issue in this case. We hold today that the FTCA waives sovereign immunity for the intentional torts of law enforcement officers, regardless of whether the tort occurred while the officer was engaged in a law enforcement activity. Our decision leads to the anomalous situation in which the federal government could be liable for the actions of a law enforcement officer but would be immune from liability for

the same conduct committed by another federal employee under the same circumstances. Nevertheless, although such a result can be criticized as inconsistent and unreasonable, I cannot say that it is so absurd as to allow us to alter the meaning—as other courts have—of an otherwise unambiguous statute.

The FTCA provides that the United States is liable for its torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This waiver of sovereign immunity is subject to several qualifications, including one for intentional torts committed by federal employees. *Id.* § 2680(h). The qualification retaining sovereign immunity for intentional torts contains a special proviso, however, for law enforcement officers. Specifically, the law enforcement proviso waives sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers . . . [for] any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *Id.* The proviso defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* As Judge Floyd explains, "[t]he plain language of the law enforcement proviso stipulates two conditions for its application: (1) an individual fitting the definition of an 'investigative or law enforcement officer' must commit an intentional tort, and (2) the claim must arise 'out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.' " Panel Op. at 5 (citing *Harris v. United States*, 677 F. Supp. 403, 405 (W.D.N.C. 1988)).

This largely unqualified waiver of sovereign immunity for law enforcement officers could, as demonstrated by this case, lead to inconsistent results. Here, Officer Kevin Lane allegedly assaulted Nicholas Ignacio through verbal insults and physical intimidation. The alleged assault occurred while the pair was working at a Pentagon security checkpoint. The con-

frontation had nothing to do with Lane's duties as a Pentagon police officer, amounting to little more than a personal dispute between coworkers. Under the law enforcement proviso, however, this workplace kerfuffle has exposed the United States to potential liability, whereas the same exchange involving federal employees who do not wear a badge and carry a weapon would not have.

The relevant legislative history arguably suggests that Congress intended for the law enforcement proviso to target primarily intentional torts committed by officers while engaged in law enforcement activities. *See, e.g.*, S. Rep. No. 93-588, 93d Cong., 2d Sess. 3 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2792 (stating that the purpose of the proviso was to "provid[e] a remedy against the Federal Government for innocent victims of federal law enforcement abuses"). Congress passed the proviso in response to a series of "no-knock" raids carried out by federal narcotics agents in Collinsville, Illinois. *Id.* (explaining that the purpose of the proviso was to provide an "effective legal remedy against the Federal Government for the actual physical damage [and] the pain, suffering and humiliation to which the Collinsville families were subjected").

Highlighting the "arbitrary distinction" between investigative and law enforcement officers and other federal employees created by strict application of the law enforcement proviso, several courts have limited the scope of the FTCA's waiver of sovereign immunity to only those intentional torts committed by an officer while engaged in a law enforcement activity. *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1134 (9th Cir. 2002); *see also Pooler v. United States*, 787 F.2d 868, 871-72 (3d Cir. 1986); *Murphy v. United States*, 121 F. Supp. 2d 21, 24-25 (D.D.C. 2000). For example, in *Pooler*, the Third Circuit determined that the waiver's reach was limited to torts committed by officers during the course of a search, seizure, or arrest. 787 F.2d at 872. Similarly, in *Orsay*, the Ninth Circuit held that the law enforcement proviso "reaches only those

claims asserting that the tort occurred in the course of investigative or law enforcement activities." 289 F.3d at 1136. Confronting a situation similar to ours in which the plaintiff levied allegations of assault based on a series of workplace threats, the *Orsay* court reasoned that "[t]o construe [the law enforcement proviso] otherwise—as reaching these workplace torts—would . . . produce the bizarre result that suit lies against the United States when one federal law enforcement officer punches another in the office, but not when other federal employees engage in the same conduct." *Id.* at 1134.

As tempting as it is to follow the lead of our sister circuits, settled principles of statutory construction prevent us from limiting the waiver of immunity contained in the law enforcement proviso. To begin with, absent an ambiguity in the words of a statute, our analysis begins and ends with the statute's plain language. *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004). We have recognized an exception to the plain meaning rule for the " 'exceptionally rare'" instance in which applying it results in an absurd outcome. *Id.* (quoting *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001)). In that regard, we have explained that "[f]or this exception to apply . . . the absurdity 'must be so gross as to shock the general moral or common sense.' " *Md. State Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 59–60 (1930)); *see also Sunterra*, 361 F.3d at 268 ("In assessing whether a plain reading of a statute implicates the absurdity exception . . . the issue is not whether the result would be 'unreasonable,' or even 'quite unreasonable,' but whether the result would be absurd." (citation omitted)). Finally, we have explained that "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd." *Id.* (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000)).

Applying these principles, the plain meaning of the law enforcement proviso compels the holding we reach today. *See*

Panel Op. at 6 ("[W]e decline to import a requirement that an officer commit the tort in the course of an investigative or law enforcement activity and hold instead that the law enforcement proviso waives immunity whenever the two conditions specified by the plain language are satisfied.").* Those courts that have strayed from the plain language to import a limitation not otherwise expressed in the statute have failed to persuasively explain how the text of the statute admits of any ambiguity. In *Pooler*, the Third Circuit did not address whether the statute was ambiguous but instead merely "read" the limitation into the statute to better accord with its view of what "Congress intended." 787 F.2d at 872. In *Orsay*, the Ninth Circuit found that the statute was ambiguous because it was "reasonably susceptible" to multiple interpretations but failed to explain how the meaning of the language employed in the statute was anything other than plain. 289 F.3d at 1134. Noting that "any ambiguities in the scope of the government's waiver must be construed in favor of immunity," the court proceeded directly to a discussion of Congress's intent and the legislative history, without addressing the plain language of the statute. *Id.* at 1133–35.

I agree with Judge Floyd, however, that "[w]here as here, the text of the statute is unambiguous, we should not engage

---

*As Judge Floyd notes, "the proviso does not relax the FTCA's jurisdictional mandate requiring that torts be committed within the scope of employment." Panel Op. at 6. The scope of employment requirement, however, may do little to remedy the incongruity of treating law enforcement officers differently from other federal employees when assessing the sovereign's liability under the FTCA. If anything, resorting to state law to determine whether a federal employee's conduct is within the scope of employment is likely to lead to disparate results based on differences in the law from state to state. Moreover, as is the case here, the scope of employment question may present factual disputes that preclude early resolution. In short, the scope of employment requirement is no substitute for a limiting principle that avoids the inconsistent application of sovereign immunity created by the law enforcement proviso. Nevertheless, I agree with my colleagues that our authority does not extend so far as to impose such a limiting principle in this case.

in an analysis of legislative history to fabricate ambiguity." Panel Op. at 6. Instead, we must apply the plain meaning of the statute unless the result would be absurd. While the inconsistent treatment of investigative and law enforcement officers and other federal employees may well be arbitrary and unreasonable, I cannot say that the result is so absurd as to "shock the general moral or common sense." *See Md. State Dep't of Educ.*, 98 F.3d at 169 (quotation omitted). To the contrary, although I am troubled by the manner in which the statute parses liability for workplace torts committed by federal employees, it is certainly plausible that Congress intended to hold law enforcement officers to a higher standard given the important trust society places in them. When the language of a statute is subject to a plausible construction, we are compelled to follow the plain meaning. *See Sunterra*, 361 F.3d at 268. Accordingly, I concur in Judge Floyd's opinion.